UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Josh Fraize**

   **v.**                                    Case No. 17-cv-231-PB
                                              Opinion No. 2017 DNH 233

**Fair Isaac Corporation**

**MEMORANDUM AND ORDER**

Josh Fraize has sued the Fair Isaac Corporation (FICO), for breach of contract, breach of the duty of good faith and fair dealing, a violation of New Hampshire's wage statute, and wrongful discharge. In this Memorandum and Order, I address FICO's motion to dismiss Fraize's wrongful discharge claim.[1]

## I. BACKGROUND

Fraize worked for FICO as a salesperson from January, 2014 to April, 2017. His compensation was determined in part by an annual "Sales Incentive Plan Participation Agreement" ("Agreement"). The 2016 and 2017 Agreements provide for commission percentages that vary based on the extent to which specified sales targets are met or exceeded. Revenue generated

---

[1] FICO also argues that Fraize's claims should be dismissed because they are subject to a choice of forum provision requiring his claims to be brought in Minnesota. I will address the choice of forum provision in a separate Memorandum and Order after the parties have completed discovery on the subject and have submitted supplemental memoranda.

pursuant to new contracts are rewarded with higher commissions than sales pursuant to contract renewals under both Agreements, and the 2017 Agreement also authorizes FICO to reduce a salesperson's commissions for "large" sales, i.e., sales that comprise more than 50% of a salesperson's annual sales target.

FICO had an established business relationship with Xerox when Fraize was first assigned to work on the Xerox account in December 2015. After months of negotiation, Xerox and FICO entered into a new contract that yielded substantial additional revenue for FICO. Fraize initially received assurances that the revenue generated by the Xerox contract would be treated as new sales for commission purposes, but FICO later informed Fraize that it intended to treat the Xerox contract as a renewal rather than as new business. FICO also informed Fraize that the Xerox contract would be subject to reduced commissions because it qualified as a "large deal" under the 2017 Agreement even if it were to qualify as new business.

Fraize complained about his proposed compensation for the Xerox contract and he was fired in retaliation for pressing his complaint.

## II. **STANDARD OF REVIEW**

When evaluating a motion to dismiss under Fed. R. Civ. P.

12(b)(6), I "accept as true the well-pleaded factual allegations of the complaint [and] draw all reasonable inferences therefrom in the plaintiff's favor." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Although the complaint need not set forth detailed factual allegations, "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is required. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### III. ANALYSIS

To maintain a successful wrongful discharge claim under New Hampshire law, a plaintiff must prove both "that the discharge was 'motivated by bad faith, retaliation, or malice'" and "that the plaintiff was discharged 'for performing an act that public policy would encourage or for refusing to do something that public policy would condemn.'" Leeds v. BAE Sys., Inc., 165 N.H. 376, 379 (2013)(quoting Karch v. BayBank FSB, 147 N.H. 525, 536 (2002)). Whether an employee's acts or refusals to act further a public policy interest ordinarily is a question of fact for the jury to resolve.[2] Id.

---

[2] FICO cites Minnesota law but does not present a developed argument that Fraize's wrongful discharge claim is governed by Minnesota law rather than New Hampshire law. Although the

Fraize alleges a plausible claim that FICO terminated him in retaliation for his complaint that the company was refusing to pay him commissions he was entitled to under the Agreements. Although these allegations appear to state a viable wrongful discharge claim, FICO nevertheless argues that they are insufficient because Fraize was pursuing only his personal interests in recovering his commissions and, therefore, his alleged protests do not further a public policy interest. I disagree.

New Hampshire's Wage Act makes it a crime for an employee to withhold wages that are due to an employee. See N.H. Rev. Stat. § 275:43. Whether public policy encouraged an employee's actions is "typically a question for the jury to decide," and should only be decided by the court when the answer is "clear." Frechette v. Wal-Mart Stores, Inc., 925 F. Supp. 95, 98 (D. N.H. 1995). Here, at the very least, it is not clear that public policy would not encourage an employee to demand his overdue wages. See Tullis v. Merrill, 584 N.W.2d 236, 239 (Iowa Sup. Ct. 1998) (under Iowa law, there is public policy permitting an

---

relevant Agreements both contain a choice of law clause stating that "this Plan will be interpreted and construed in accordance with and governed by the laws of the State of Minnesota . . .," the clause applies only to the Agreements and does not cover Fraize's wrongful discharge claim. Accordingly, I evaluate Fraize's claim under New Hampshire law.

employee to demand overdue wages).  Thus, Fraize's claim is not deficient for failing to allege that he was terminated because he undertook an act that public policy would support.

FICO also argues that Fraize's wrongful discharge claim is barred by the New Hampshire Supreme Court's decision in [Cilley v. New Hampshire Ball Bearings, Inc., 128 N.H. 401, 405-406 (1986)](). FICO bases its argument on the following language in the decision:

> The plaintiff contends that the company's firing him for his refusal to give up these improperly withheld "wages" violates public policy. We conclude that the argument has no merit. Even if one accepts, for the sake of argument, that use of company resources for personal benefit is a "wage" under RSA chapter 275 and that the "wage" was improperly withheld by the company, then Cilley is provided with remedies by the statute, remedies which do not include insubordination.

Id. at 407.  It then reads this language to mean that a plaintiff cannot sue if he is discharged for complaining about his employer's failure to pay his wages because the wage statue gives employees a statutory remedy for wrongfully withheld wages.  See [Wenners v. Great State Beverages, Inc., 140 N.H. 100, 103 (1995)]() ("a plaintiff may not pursue a common law remedy where the legislature intended to replace it with a statutory cause of action").

FICO's argument is based on a misreading of Cilley.  In Cilley, the plaintiff was discharged after he engaged in what he

5

claimed was a form of self-help to recover wages that allegedly were owed to him by his employer.  128 N.H. at 405-406.  The language FICO relies on in Cilley merely concludes that public policy does not support the use of self-help in such circumstances because an employee has an available remedy for withheld wages under the wage statute.  Id.  The New Hampshire Supreme Court did not say that the legislature intended for the wage statute to replace the common law action for wrongful termination.  Because Fraize did not engage in self-help to recover his commission, his wrongful discharge claim is not barred by Cilley.

## IV.  CONCLUSION

For the reasons set forth in this Memorandum and order, I deny FICO's motion to dismiss to the extent that it challenges the sufficiency of Fraize's wrongful discharge claim.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

October 30, 2017

cc: James P. Harris, Esq.
    Paul DeCarolis, Esq.