## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Josh Fraize

   v.                               Case No. 17-cv-231-PB
                                     Opinion No. 2017 DNH 005

Fair Isaac Corporation

## MEMORANDUM AND ORDER

Josh Fraize has sued the Fair Isaac Corporation ("FICO") for breach of contract, breach of the duty of good faith and fair dealing, a violation of New Hampshire's wage act, and wrongful discharge. FICO argues that Fraize's claims must be dismissed because they are subject to choice of forum clauses in agreements between Fraize and FICO that require Fraize's claims to be litigated in Minnesota. For the reasons set forth in this Memorandum and Order, I dismiss Fraize's claims without prejudice to his right to refile his claims in the jurisdiction specified by the choice of forum clauses.

## I. BACKGROUND

Fraize worked for FICO as a salesperson from January, 2014 until April, 2017. His compensation was determined each year in part based on an annual "Sales Incentive Plan Participation Agreement" ("Agreement"). The 2016 and 2017 Agreements specify

commission percentages that vary based on the extent to which designated sales targets are met or exceeded.  Under both Agreements, sales generated pursuant to new contracts are rewarded with higher commissions than sales that result from contract renewals.  The 2017 Agreement also authorizes FICO to reduce a salesperson's commissions for "large" sales, i.e., sales that comprise more than 50% of a salesperson's annual sales target.  The 2016 Agreement covers the fiscal year beginning on October 1, 2015, and the 2017 Agreement covers the fiscal year beginning on October 1, 2016.

FICO had an established business relationship with Xerox when Fraize was first assigned to work on the Xerox account.  In October 2016, after months of negotiation, Xerox and FICO entered into a new contract that yielded substantial additional revenue for FICO.  Fraize initially received assurances that sales resulting from the contract would be treated as new sales for commission purposes.  In February, 2017, however, FICO reversed its position and informed Fraize that it intended to treat the Xerox contract as renewal business rather than new business.  FICO also informed Fraize that even if the Xerox contract were treated as new business, his commission would be reduced because the contract qualified as a "large deal" under the 2017 Agreement.  Fraize complained about his proposed

2

compensation and in April 2017 he was fired in retaliation for pressing his complaint.

The 2016 and 2017 Agreements contain similar choice of law and choice of forum clauses. The 2016 Agreement states:

> [u]nless prohibited by applicable law, this Plan will be interpreted and construed in accordance with and governed by the laws of the State of Minnesota. Any action relating to or arising out of this Plan must be commenced exclusively in the State and Federal Courts located in Hennepin County, Minnesota, and all Participants agree to the exclusive venue and jurisdiction of the Minnesota courts and waive any objection based on lack of jurisdiction or inconvenient forum. Doc. 2-4 at 3.

The 2017 Agreement provides:

> [e]xcept with respect to Participants who primarily reside and work in California or unless prohibited by applicable law, this Plan will be interpreted and construed in accordance with and governed by the laws of the State of Minnesota, and all Participants agree to the exclusive venue and jurisdiction of the State and Federal Courts located in Hennepin County, Minnesota and waive any objection based on lack of jurisdiction or inconvenient forum. Doc. 2-3 at 3.

Notwithstanding these provisions, Fraize filed his action in Hillsborough County Superior Court on May 10, 2017. FICO then removed the case to this court on June 13, 2017.

## II. **STANDARD OF REVIEW**

FICO bases its motion to dismiss on Fed. R. Civ. P.

3

12(b)(6). The First Circuit has determined that a forum selection clause can be enforced through a Rule 12(b)(6) motion. See Claudio-de Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014); see also Salovara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 298 (3d Cir. 2001) ("a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum").

When evaluating a Rule 12(b)(6) motion, I "accept as true the well-pleaded factual allegations of the complaint [and] draw all reasonable inferences therefrom in the plaintiff's favor." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). To survive dismissal, "the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" A.G. ex rel Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### III. <u>ANALYSIS</u>

FICO bases its motion to dismiss on the forum selection clauses set forth in the 2016 and 2017 Agreements. In resolving FICO's motion, I first determine whether the clauses are enforceable and then evaluate Fraize's argument that they do not reach either his wage act or his wrongful discharge claims.

4

**A.   Enforceability**

In M/S Bremen v. Zapata Offshore Co., 407 U.S. 1, 15, 18 (1972), the Supreme Court held that a forum selection clause is unenforceable if it was the product of "fraud or overreaching;" if enforcement "would contravene a strong public policy" of the forum where the suit was filed; if enforcement would be "unreasonable and unjust;" or if enforcement would cause the case to be tried in a forum "seriously inconvenient for the" parties, such that it would "effectively deprive[ the plaintiff] of [her] day in court."  See 407 U.S. at 15, 18.[1]

Fraize first challenges the forum selection clauses by arguing that they were the product of "fraud or overreaching" because they resulted from his negotiations with FICO, which is a business with much greater bargaining power than a mere employee.  Doc. 14-1 at 9.  This argument is a nonstarter because courts have consistently enforced forum selection clauses in contracts between employers and employees despite the

---

[1] The First Circuit has not yet determined whether the enforceability of a forum selection clause in a diversity case presents an issue of federal law or state law.  See, e.g., Lambert v. Kysar, 983 F.2d 1110, 1116 (1st Cir. 1993) (leaving issue unresolved); see also Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 16 (1st Cir. 2009) (same).  The circuits are divided on the subject, but I follow the Third Circuit in concluding that enforceability questions are resolved by using federal law.  See Collins v. Mary Kay, Inc., 874 F.3d 176, 181 (3d Cir. 2017).

5

inherent imbalance in their relative bargaining power.  See e.g. Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d at 49-50; Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 389 (1st Cir. 2001) (enforcing the forum selection clause contained in an employment contract, despite the fact that the clause was contained in "boilerplate provisions not subject to negotiation . . . in small print on the back of the contract."); see also Murphy v. Schneider National, Inc., 362 F.3d 1133, 1141 (9th Cir. 2004) (rejecting claim that a forum selection clause is unenforceable because of non-negotiability of the clause and power differential between employer and employee).

Fraize next argues that the forum selection clauses should not be enforced because it would be "seriously inconvenient" for him to travel to Minnesota to litigate his case.  Doc. 14-1 at 8.  Subjecting a litigant to travel costs, however, is not the kind of "serious[] inconvenien[ce]" that runs afoul of Bremen. See In re Mercurio, 402 F.3d 62, 66 (1st Cir. 2005) ("something considerably more than the mere inconvenience of traveling to litigate in a different, even faraway foreign jurisdiction, is required to overcome a contractual agreement to do so.").

Fraize also argues that the forum selection clauses cannot be enforced with respect to his wage act and wrongful discharge claims even if they cover his other claims.  In Fraize's view,

6

New Hampshire has a "strong public policy" encouraging those who have been wrongfully denied wages or discharged to take legal action against their employers.  Doc. 31 at 4.  Fraize fears that this public policy would be undermined if he were required to litigate his wage act and wrongful discharge claims in Minnesota because a court in that jurisdiction would refuse to enforce his rights under New Hampshire law.

    I reject Fraize's argument because he has failed to demonstrate that his fear is grounded in reality.  Although the 2016 and 2017 Agreements must be interpreted using Minnesota law, the choice of law clauses in the Agreements do not in any way restrict a Minnesota court from applying New Hampshire law to Fraize's wage act and wrongful discharge claims.  Nor do Minnesota's choice of law rules require a court to use Minnesota law to resolve Fraize's wage act and wrongful discharge claims.  See Jepson v. General Cas. Co. of Wisconsin, 513 N.W.2d 467, 470 (1994) (Minnesota choice of law principles require the court to choose which law to apply by evaluating "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law.").  Accordingly, Minnesota courts have not in the past hesitated to apply the laws of another state where it is

appropriate to do so.  See, e.g., Buche v. Liventa Bioscience, Inc., 112 F.Supp.3d 883 (D. Minn. 2015) (federal district court in Minnesota interpreting and applying the Pennsylvania state wage act); Aero Systems Engineering, Inc. v. Opron, Inc., 21 F.Supp.2d. 990, 1002 (D. Minn. July 31, 1998) (denying motion to dismiss and requiring Minnesota court to apply Canadian law in suit).  Because Fraize would be free to press his New Hampshire wage act and wrongful discharge claims in Minnesota, enforcing the forum selection clauses would not violate any New Hampshire public policy favoring such claims.

Fraize nevertheless argues that the language of the wage act itself makes the forum selection clauses unenforceable with respect to a wage act violation.  The New Hampshire wage act states, "[an] [a]ction by an employee to recover unpaid wages . . . may be maintained in any court of competent jurisdiction . . ."  N.H. Rev. Stat. § 275:53.  Fraize argues that because the wage act permits a plaintiff to bring a claim in "any court," a forum selection clause cannot require that a plaintiff bring a wage act claim in a specific venue, to the exclusion of other venues.  I disagree.

If a statute requires a party to assert a claim in a particular venue and a forum selection clause prohibits the party from filing the claim in the required venue, the court

will not enforce the forum selection clause. See Fog Motorsports #3, Inc. v. Arctic Cat Sales, Inc., 159 N.H. 266, 268 (2009)("a court may not enforce a forum selection clause [to preclude a court in New Hampshire from hearing a case] where it is required by statute to entertain the action"); see N.H. Rev. Stat. 508-A:3. If, however, the statute permits a plaintiff to bring his claim in more than one venue, and a forum selection clause requires the plaintiff to bring the suit in one of the many statutorily-permitted venues, the court will enforce the clause. Melia v. Zenhire, Inc., 462 Mass. at 172-173; see Summa Humma Enters., LLC. v. Fisher Eng'g, 2013 DNH 2, 28-29. Because the New Hampshire wage act permits an employee to file a claim "in any court of competent jurisdiction. . .," N.H. Rev. Stat. § 275:53, the choice of forum clauses do not violate New Hampshire law.[2]

B.  **Scope**

Fraize also argues that the choice of forum clauses in the

---

[2] The fact that the forum selection clauses state that they will apply "unless prohibited by applicable law" does not change this outcome. If the wage act required a particular venue, and a forum selection clause prohibited that venue, then the forum selection clause would be invalid with respect to the wage act claim, because the clause is "prohibited by applicable law." The wage act, however, does not prohibit employers and employees from adopting choice of forum clauses that specify a forum other than New Hampshire.

2016 and 2017 Agreements do not cover his wage act and wrongful discharge claims even if the clauses are otherwise enforceable. I examine this argument by first construing the choice of forum clauses and then applying them to each claim in turn.

Both Agreements specify that "[a]ll Participants agree to the exclusive venue and jurisdiction of the state and federal courts in Hennepin County, Minnesota and waive any objection based on lack of jurisdiction or incorrect forum." Doc. 2-3 at 3; Doc. 2-4 at 3. The 2016 Agreement, but not the 2017 Agreement, also prefaces this statement with an additional declaration that "[a]ny action relating to or arising out of this Plan must be commenced exclusively in the state and federal courts of Hennepin County, Minnesota . . . ." Doc. 2-4 at 3. Fraize seizes on the omission of this language from the 2017 Agreement and concludes without providing any argument or citation to relevant authority that the 2017 Agreement's choice of forum clause, which he asserts is controlling with respect to his wage act and wrongful discharge claims, must be read more narrowly than the 2016 Agreement.

I reject Fraize's argument because it makes no grammatical sense. The language omitted from the 2017 Agreement narrowed the class of actions subject to the forum selection clause to actions "relating to or arising out of" the Agreement. Doc. 2-4

10

at 3.  The omission of narrowing language from an agreement ordinarily will not be read to further narrow the agreement's scope.  Because Fraize presents no principled argument to support his contention that a different result was intended here, I construe the 2017 Agreement to be at least as broad as the counterpart clause contained in the 2016 Agreement.

Because I read the forum selection clauses in both Agreements to cover claims relating to or arising out of either Agreement, it necessarily follows that Fraize's wage act and wrongful discharge claims are covered by the Agreements.  I reach this conclusion with respect to Fraize's wage act claim because the claim arises from the Agreements and involves the same operative facts as his breach of contract and good faith and fair dealing claims.  See Collins, 874 F.3d at 185 (forum selection clause in contract applied to state law wage claim); Melia v. Zenhire, Inc., 462 Mass. 164, 169 (2012) (forum selection clause that covered all claims "arising out of" the contract applied to wage act claim).  Although Fraize's wrongful discharge claim does not arise directly from either Agreement, it relates to the Agreements because Fraize claims that he was wrongfully discharged for demanding commissions the Agreements authorized.  See John Wyeth & Bro. Ltd. V. CIGNA Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997) (citing Webster's Dictionary

for the proposition that a dispute "relates to" an agreement if it has a "logical or causal connection" to the agreement).

### IV. CONCLUSION

For the aforementioned reasons, I grant FICO's motion to dismiss (Doc. 9) without prejudice to Fraize's right to refile his claims in a state or federal court located in Hennepin County, Minnesota. The clerk is directed to enter judgment and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

January 4, 2018

cc: Paul M. DeCarolis, Esq.
James P. Harris, Esq.
Anthony Sculimbrene, Esq.